# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### OWENSBORO DIVISION

**CIVIL ACTION NO: 4:22-CV-00095-JHM**

**ASHLEY BLACKBURN**                                                    **PLAINTIFF**

**V.**

**RELIANCE-STANDARD LIFE**
**INSURANCE COMPANY and**
**BAPTIST HEALTHCARE SYSTEM**                                  **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Baptist Healthcare System's Motion to Dismiss. [DN 20]. Fully briefed, this matter is ripe for decision. For the following reasons, the Defendant's Motion is **DENIED**.

### I. BACKGROUND

Plaintiff Ashley Blackburn ("Mrs. Blackburn") is a former nurse for Defendant Baptist Healthcare System ("Baptist"). [DN 20 at 2]. Her husband, Ray Blackburn ("Mr. Blackburn"), was also an employee for the hospital. [DN 22 at 3]. Each spouse obtained life insurance through their employment with policies that Defendant Reliance-Standard Life Insurance Company ("Reliance-Standard") provided to all Baptist employees. [*Id.*; DN 20 at 2].

The Blackburns also wished to obtain supplemental life insurance on each other. [DN 22 at 4]. Concerned that her marriage to another Baptist employee would negatively impact her ability to obtain supplemental life insurance on her husband, Mrs. Blackburn approached Baptist's human resources manager, Karen Sparks ("Ms. Sparks"), to ask if Reliance-Standard's policy allowed her to supplementally insure Mr. Blackburn's life. [*Id.*]. Ms. Sparks informed Mrs. Blackburn that the only effect the marriage had on her ability to insure her husband's life was that it limited her to obtaining $100,000 in supplemental coverage. [*Id.*]. But this statement was incorrect; Reliance-

Standard's policy expressly says that a Baptist employee cannot obtain any spousal coverage if the spouse is also a Baptist employee. [DN 20 at 3]. Despite Reliance-Standard's clear policy, and despite knowing the entire time that the Blackburns were married Baptist employees, Baptist, through Ms. Sparks, continuously represented to Mrs. Blackburn that she could maintain $100,000 of supplemental life insurance coverage on her husband. An illustrative example is when Mrs. Blackburn accidentally attempted to enroll her husband in a $500,000 supplemental term life insurance plan. [DN 22 at 4]. Ms. Sparks caught the error and told the Blackburns that, because they were married, they had to reduce the application amount to $100,000. [*Id.*]. At no point did anyone at Baptist inform the Blackburns that they were not eligible for supplemental spousal insurance at all. [*Id.*]. Instead, with Baptist's help, Mrs. Blackburn successfully took out a $100,000 Reliance-Standard supplemental insurance policy on her husband's life. [DN 20 at 3]. The couple paid the premiums on this coverage for over ten years. [DN 22 at 4].

Unfortunately, sometime prior to the fall of 2019, Mr. Blackburn developed cancer and lost his ability to work. [*Id.* at 5–6]. His disability insurance maintained the Reliance-Standard life insurance policy he had on himself, and it would continue to do so while he remained sick. [*Id.* at 5]. At this point, Mrs. Blackburn stopped working at Baptist so she could care for her ailing husband. [*Id.*]. Knowing that he would have difficulty obtaining new life insurance once he recovered, Mrs. Blackburn sought to port the Reliance-Standard supplemental life insurance policy she had on him. [*Id.*]. Reliance-Standard informed her that to keep her husband covered, she would have to convert the supplemental term life insurance policy into an individual whole life insurance policy. [*Id.*]. Mrs. Blackburn followed Reliance-Standard's instructions and worked diligently with Ms. Sparks to convert the coverage. [*Id.*]. By the end of March 2020, Mrs. Blackburn successfully obtained a Reliance-Standard whole life insurance policy on her husband

2

("the Policy"). [*Id.*]. The entire time she was helping Mrs. Blackburn convert her coverage, Ms. Sparks knew that that Mr. Blackburn was a former Baptist employee that was still insured under his own Reliance-Standard policy and his wife's then-existing supplemental policy. [*Id.*]. Neither she nor anyone at Baptist or Reliance-Standard told Mrs. Blackburn that she could not obtain a policy on her husband if he was still covered through his former employer. [*Id.*].

Mr. Blackburn died on March 30, 2020. [*Id.*]. Soon after, Mrs. Blackburn submitted a claim for the $100,000 death benefit due under the Policy. [*Id.* at 6]. But Reliance-Standard denied the claim, as well as all of Mrs. Blackburn's subsequent appeals. [*Id.*; DN 20 at 4]. It asserted that it never knew Mr. Blackburn also worked for Baptist and had his own policy. [DN 22 at 6]. Had it known, it would never have allowed Mrs. Blackburn to take out a policy that was contrary to its clear guidelines. [*Id.*]. Reliance-Standard refunded the premiums for the Policy, but it did not for the original supplemental insurance that the Blackburns had paid for ten years. [DN 20 at 4; DN 1 at ¶ 30]. After her appeals were denied, Mrs. Blackburn requested numerous documents related to Baptist's employee benefit plan pursuant to ERISA § 503 and applicable federal regulations, but she only received a fraction of the documents she sought. [DN 22 at 7].

Mrs. Blackburn commenced this ERISA action against both Reliance-Standard and Baptist shortly thereafter, seeking to recover the amount of money she would have received had the Policy been enforced. [*Id.*; DN 20 at 8]. She does not pray for damages for the denial of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). Instead, her theory of suit is a breach of fiduciary duties by Reliance-Standard and Baptist, and she seeks to recover through the "other equitable relief" provision in § 1132(a)(3). [DN 20 at 6]. She also seeks statutory penalties for Baptist's failure to provide her with plan documents upon request pursuant to § 1132(c). [DN 1 at ¶ 72]. Baptist now moves to dismiss her complaint, asserting that 1) she impermissibly repackaged a denial-of-benefits claim,

3

2) she could not rely on Baptist's oral statements, and 3) she did not allege enough facts to be entitled to statutory penalties.  [DN 20].

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true," *id.*, and determine whether the "complaint . . . states a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.  Instead, "a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Id.* at 663 (quoting Fed. R. Civ. P. 8(a)(2)).  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

If "matters outside the pleadings are presented to and not excluded by the court" when ruling upon a motion under Rule 12(b)(6), the Federal Rules require that "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  This Rule does not require the Court to convert a motion to dismiss into a motion for summary judgment every time

the Court reviews documents that are not attached to the complaint. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). "[W]hen a document is referred to in the complaint and is central to the plaintiff's claim . . . [,] the defendant may submit an authentic copy [of the document] to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Id.* (quotation omitted).

### III. DISCUSSION

#### A.  *Mrs. Blackburn May Recover Under 29 U.S.C. § 1132(a)(3)*

ERISA enables a beneficiary "to recover benefits due to [her] under the terms of [her] plan." 29 U.S.C. § 1132(a)(1)(B) ("§ 502(a)(1)(B)"). It also specifies that a beneficiary can "obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3) ("§ 502(a)(3)"). A beneficiary may only recover under § 502(a)(3) if she cannot be "made whole under § 502(a)(1)(B) through recovery of [her] disability benefits . . . ." *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 371 (6th Cir. 2015) (*en banc*). Through § 502(a)(3), the beneficiary may only obtain relief that was traditionally available in equity. *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011). That includes relief in cases that, as here, "concern[] a suit by a beneficiary against a plan fiduciary (whom ERISA typically treats as a trustee) about the terms of a plan (which ERISA typically treats as a trust)." *Id.* Section 502(a)(3) is "a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). In *Varity*, a group of beneficiaries could not sue their employer via § 502(a)(1)(B) "because they were no longer members of [the employer's] plan and, therefore, had no benefits due [to] them under the terms of the plan." *Id.* at 515 (internal markings omitted). The Supreme Court held that the beneficiaries could instead sue under § 502(a)(3) for being misled

into thinking they were insured when they really were not, for they had no remedy under any other part of ERISA.

Here, Mrs. Blackburn is properly suing for breach of fiduciary duty because she does not have a claim for denial of benefits. Because she was never eligible to enroll in the Policy in the first place, she has no benefits due to her under it. [*See* DN 20 at 3]. She cannot be made whole under § 502(a)(1)(B), so she must turn to § 502(a)(3) to gain relief. *See Rochow*, 780 F.3d at 371. *Varity* is almost directly on point. Like in that case, where the beneficiaries could sue for breach of fiduciary duty because suing for denial of benefits was not an option to them, suing for denial of benefits also is not an option for Mrs. Blackburn. *See Varity*, 516 U.S. at 512; *see also Chelf v. Prudential Ins. Co. of Am.*, 31 F.4th 459 (2022) (holding that beneficiaries could sue their employer/plan administrator for breach of fiduciary duty when employer's mishandling of plan funds caused beneficiaries to lose entitlement to benefits).

Baptist fervently argues that we should dismiss Mrs. Blackburn's § 502(a)(3) action because she is "repackaging" a claim for denial of benefits that can only be brought under § 502(a)(1)(B). [DN 20 at 7]. It hones in on one sentence in *Rochow*: "A claimant can pursue a breach-of-fiduciary-duty claim under § 502(a)(3), irrespective of the degree of success obtained on a claim for recovery of benefits under § 502(a)(1)(B), only where the breach of fiduciary duty claim is based on an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate." *Rochow*, 780 F.3d at 372 (emphasis removed). Baptist reads this quote to say that if the "core injury" is really non-payment of benefits, then the beneficiary can only sue under § 502(a)(1)(B). [DN 20 at 9].

But Baptist reads those lines from *Rochow* out of context. Its reading disregards the case's facts and the legal question the court sought to answer. *Rochow* asked: "Is [the beneficiary]

entitled to recover under *both* ERISA § 502(a)(1)(B) and § 502(a)(3) for [the insurer]'s arbitrary and capricious denial of . . . benefits?". *Rochow*, 780 F.3d at 370 (emphasis added). The *Rochow* plaintiff claimed relief for both the insurer's arbitrary and capricious denial of benefits and "its breach of fiduciary duty *consisting of the arbitrary and capricious denial of benefits*." *Id.* at 371 (emphasis added). In other words, he tried to use § 502(a)(3) to get additional relief for denial of benefits after already fully recovering under § 502(a)(1)(B) for the same denial of benefits. *See id.* That is the "repackaging" *Rochow* bars: making the exact same claim under two different ERISA sections and obtaining "impermissible duplicative recovery." *Id.* Mrs. Blackburn is not seeking a double recovery. She is not alleging that Baptist denied her benefits. Rather, she alleges Baptist misinformed her about whether she was entitled to benefits. [DN 22 at 4]. She is suing under one ERISA section to redress one wrongful act and recover only the money the Policy said she would get because Baptist incorrectly told her she was entitled to it. *See Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 841 (6th Cir. 2007) (holding that breach-of-fiduciary-duty claim was not a repackaged denial-of-benefits claim when beneficiary alleged he was led "to believe that he had two years of 'own occupation' benefits" when he really did not).

    B. *Mrs. Blackburn Properly Alleged that Baptist's Verbal Misrepresentations Breached Its Fiduciary Duty*

The administrator of any ERISA plan is also a plan fiduciary. 29 U.S.C. § 1002(14)(A). A plan fiduciary must act solely in the beneficiary's interest and use "the care, skill, prudence, and diligence" a reasonably prudent person would use in similar circumstances. 29 U.S.C. § 1104(a)(1), (a)(1)(B). ERISA treats plan administrators as trustees, *see CIGNA*, 563 U.S. at 439, so the plan administrator "is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing with a third person." *Krohn v. Huron*

*Mem'l Hosp.*, 173 F.3d 542, 548 (6th Cir. 1999) (quoting Restatement (Second) of Trusts § 173, comment d (Am. L. Inst. 1959)).  It also has a duty to honestly respond to all the beneficiary's inquiries.  *See Gregg v. Transp. of Am. Int'l*, 343 F.3d 833, 847 (6th Cir. 2003).  "[O]nce an ERISA beneficiary has requested information from an ERISA fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance . . . ."  *Krohn,* 173 F.3d at 547.  In *Gregg*, a union administered a group life insurance policy for its members.  343 F.3d at 847.  At a meeting where members asked questions about the union's new life insurance plan before deciding whether to join it, the union's leaders neglected to share material facts about the policy and gave members information that was contrary to the policy's express terms (which one of the leaders did not read).  *Id.* at 847–48.  The court held that the union breached its fiduciary duties to provide its members with all material information and to truthfully answer their questions.  *Id.* at 848.

Here, Baptist, as the plan administrator, had a duty to answer all of Mrs. Blackburn's insurance questions truthfully.  *See Gregg*, 343 F.3d at 847; [DN 20-3 at 24].  When she asked whether she could obtain supplemental life insurance on her husband's life, Baptist was duty-bound to tell her she could not, for it knew full well that Mr. and Mrs. Blackburn were both Baptist employees.  *See Krohn*, 173 F.3d at 547; [DN 22 at 4].  Baptist also misrepresented that the Policy was effective by collecting premiums on it.[1]  [*See* DN 1 at ¶ 50].  If Baptist incorrectly informed

---

[1] Mrs. Blackburn also alleges that Baptist breached its fiduciary duty by "mishandling" the Policy premiums it collected from her.  [DN 1 at ¶ 50].  Baptist uses a great deal of space responding to this allegation in its motion and reply, arguing that premium collection was a "ministerial" role in which it did not exercise any discretion, meaning it was not acting in a fiduciary capacity under ERISA.  *See* 29 U.S.C. § 1002(21)(A); [DN 20 at 12–14; DN 23 at 6–8].  But the Court does not think it matters whether Baptist breached a fiduciary duty when it collected premiums.  Mrs. Blackburn does not allege that Baptist's mishandling of premiums caused her any harm.  Unlike in *Chelf*, where the beneficiaries lost their coverage *because* their employer mishandled the premiums, Baptist's handling of premiums had nothing to do with Reliance-Standard not paying the death benefit.  31 F.4th at 466–67.  In the Court's view, Baptist's premium collection is only relevant to the extent that it contributed to Mrs. Blackburn incorrectly believing the Policy was effective, thereby forming part of Baptist's misinforming of her.  But to that end, it does not matter whether collecting premiums was a fiduciary function or if Baptist breached any duties while doing so.

Mrs. Blackburn that she was eligible to buy this insurance, and if it continued to represent that she was eligible when it helped her convert the coverage, it violated its fiduciary duty to her. [DN 22 at 4–5]. As in *Gregg*, where the union breached its fiduciary duty by misinforming its members on its new life insurance policy's contents, Baptist breached its duty if it misinformed Mrs. Blackburn that she was eligible for and effectively enrolled in the Policy. *See Gregg*, 343 F.3d at 847–48; [DN 22 at 4–5].

Baptist urges that this case is governed by *Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998). It seizes upon language that "Congress intended that plan documents and SPDs exclusively govern an employer's obligations under ERISA plans," *Sprague*, 133 F.3d at 402 (citation omitted), interpreting this to mean that beneficiaries can never have a claim against a fiduciary for relying on oral statements that conflict with written documents. [DN 20 at 15]. But Baptist reads *Sprague* to say more than it does. *Sprague* held, *inter alia*, that 1) plan documents cannot be modified by oral agreement, and 2) fiduciaries need not disclose information ERISA does not require them to disclose unless beneficiaries ask. 133 F.3d at 403, 405–06. *Sprague* used the language it did to support those holdings; it did not purport to hold that fiduciaries could misrepresent what plan documents said. In fact, dicta at the end of *Sprague* clarified that if the employer *had* misled its employees as to what their plans entailed, "a different case would have been presented." *Id.* at 406. "There is . . . a world of difference between [an] employer's deliberate misleading of employees . . . and GM's failure to begin every communication to plan participants with a caveat." *Id.* at 405.

Baptist also asserts that Mrs. Blackburn cannot recover because she "has failed to identify any injury resulting from an alleged breach of fiduciary duty by Baptist . . . ." [DN 23 at 1]. Specifically, it says she failed to allege "any detrimental reliance on Baptist's alleged

misrepresentations that caused her any harm." [DN 23 at 8–9]. But Baptist is mistaken; Mrs. Blackburn clearly stated that she "reasonably and detrimentally relied on Defendants' written and oral misrepresentations in believing that she was fully covered and that Plaintiff would receive all of the benefits elected and paid for." [DN 1 at ¶ 56].

### C.  *The Court Will Not Rule on Statutory Penalties at This Stage*

Under 29 U.S.C. § 1132(c), a court may, but is not required, to award statutory penalties for an administrator's failure to timely disclose certain plan documents to a beneficiary. 29 U.S.C. § 1132(c)(1)(B); *Bustetter v. CEVA Logistics U.S., Inc.*, No. 18-58-DLB-EBA, 2019 WL 6719485, at *5 (E.D. Ky. Dec. 10, 2019) (citing *Zirnhelt v. Mich. Consol. Gas Co.*, 526 F.3d 282, 290 (6th Cir. 2008)).  Usually, courts do not impose statutory penalties absent a showing of prejudice or bad faith. *See Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994) (collecting cases). Baptist argues that because Mrs. Blackburn alleged neither prejudice nor bad faith in her complaint, the Court should dismiss her statutory penalties claim. [DN 20 at 17].  But just because courts usually do not award statutory penalties without such a showing does not mean that Mrs. Blackburn cannot, as a matter of law, win them.  *See, e.g., Daniel v. Eaton Corporation*, 839 F.2d 263 (6th Cir. 1988) (affirming district court's grant of statutory penalties despite finding that failure to respond to request for ERISA documents was not deliberate).  Facts could come to light during discovery that could convince the Court that Mrs. Blackburn is entitled to statutory penalties.  In any event, Mrs. Blackburn was not required to plead prejudice or bad faith to state her claim for them, so the Court has no grounds for dismissing it.  *See* 29 U.S.C. § 1132(c)(1)(B).

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Baptist Healthcare System's Motion to Dismiss is **DENIED**.

Joseph H. McKinley Jr., Senior Judge

United States District Court

cc: counsel of record

November 18, 2022

11